# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO._____

JORDAN ROSENBLATT,
Individually and On Behalf Of All
Others Similarly Situated,

Plaintiff,

V.

DCT INDUSTRIAL TRUST INC.,
DCT INDUSTRIALOPERATING PARTNERSHIP LP,
THOMAS F. AUGUST,
MARILYN A. ALEXANDER,
RAYMOND B. GREER,
JOHN S. GATES JR.,
TRIPP H. HARDIN III,
TOBIAS HARTMANN,
PHILIP L. HAWKINS,
JOHN C. O'KEEFFE,
MARCUS L. SMITH,
PROLOGIS, INC.,
AND PROLOGIS, L.P.,

Defendants.

---

## CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

---

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.   This action stems from a proposed transaction announced on April 29, 2018 (the

"Proposed Transaction"), pursuant to which DCT Industrial Trust Inc. ("DCT" or the "Company") and its controlled entity, DCT Industrial Operating Partnership LP ("DCT OP"), will be acquired by Prologis, Inc. ("Prologis") and its controlled entity, Prologis, L.P. ("Prologis OP").

2. On April 29, 2018, DCT's Board of Directors (the "Board" or "Individual Defendants") caused the Company and DCT OP to enter into an agreement and plan of merger (the "Merger Agreement") with Prologis and Prologis OP. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by DCT's shareholders and completed, they will receive 1.02 shares of Prologis common stock for each share of DCT they own.

3. On June 8, 2018, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of DCT common stock.

9.      Defendant DCT is a Maryland corporation and maintains its principal executive offices at 555 17th Street, Suite 3700, Denver, Colorado. DCT's common stock is traded on the NYSE under the ticker symbol "DCT." DCT is a party to the Merger Agreement.

10.     Defendant DCT OP is a Delaware limited partnership and a party to the Merger Agreement.

11.     Defendant Thomas F. August ("August") is Chairman of the Board of DCT.

12.     Defendant Marilyn A. Alexander ("Alexander") is a director of DCT.

13.     Defendant Raymond B. Greer ("Greer") is a director of DCT.

14.     Defendant John S. Gates Jr. ("Gates") is a director of DCT.

15.     Defendant Tripp H. Hardin III ("Hardin") is a director of DCT.

16.     Defendant Tobias Hartmann ("Hartmann") is a director of DCT.

17.     Defendant Philip L. Hawkins ("Hawkins") is President, Chief Executive Officer ("CEO"), and a director of DCT.

18.     Defendant John C. O'Keeffe ("O'Keeffe") is a director of DCT.

19.     Defendant Marcus L. Smith ("Smith") is a director of DCT.

20.     The defendants identified in paragraphs 11 through 19 are collectively referred to

herein as the "Individual Defendants."

21. Defendant Prologis is a Maryland corporation and a party to the Merger Agreement.

22. Defendant Prologis OP is a Delaware limited partnership and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of DCT (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of April 23, 2018, there were 94,098,626 shares of DCT common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards

of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

30. DCT is a leading industrial real estate company specializing in the ownership, acquisition, development, leasing, and management of bulk-distribution and light-industrial properties located in high-demand distribution markets in the United States. DCT's actively managed portfolio is strategically located near population centers and well-positioned to take advantage of market dynamics.

31. DCT was formed as a Maryland corporation in April 2002 and has elected to be treated as a real estate investment trust ("REIT") for U.S. federal income tax purposes. The Company is structured as an umbrella partnership REIT under which substantially all of its business is conducted through a majority owned and controlled subsidiary, DCT OP, for which DCT is the sole general partner. As of March 31, 2018, DCT owned approximately 96.7% of the outstanding equity interests in the DCT OP.

32. DCT owns properties through DCT and its subsidiaries. As of March 31, 2018, DCT owned interests in 425 properties, comprised of approximately 73.7 million square feet of properties leased to approximately 840 customers.

33. On April 29, 2018, the Individual Defendants caused the DCT and DCT OP to enter into the Merger Agreement.

34. Pursuant to the Merger Agreement, Prologis and DCT will combine through a merger of DCT with and into Prologis, with Prologis surviving the merger as the surviving entity. If the company merger is completed pursuant to the Merger Agreement, each share of DCT common stock will convert into the right to receive 1.02 shares of Prologis common stock.

35. Additionally, DCT OP will merge with and into Prologis OP, with Prologis OP surviving the merger as the surviving partnership. If the partnership merger is completed pursuant to the Merger Agreement, each DCT OP common unit will be converted into the right to receive 1.02 common units in Prologis OP.

36. The combined company after the mergers will retain the name "Prologis, Inc." and will continue to trade on the NYSE under the symbol "PLD."

37. According to the press release announcing the Proposed Transaction:

Prologis, Inc. (NYSE: PLD) and DCT Industrial Trust Inc. (NYSE: DCT) today announced that the two companies have entered into a definitive merger agreement by which Prologis will acquire DCT for $8.4 billion in a stock-for-stock transaction, including the assumption of debt. The boards of directors of both companies have unanimously approved the transaction. . . .

The 71 million square foot operating portfolio deepens Prologis' presence in high-growth markets including Southern California, the San Francisco Bay Area, New York/New Jersey, Seattle and South Florida. The acquisition also includes:

•7.1 million square feet of development, redevelopment and value-added projects
•195 acres of land in pre-development, predominantly in Seattle, Atlanta, South Florida and Southern California with build-out potential of over 2.9 million square feet
•215 acres of land under contract or option, predominately in New York/New Jersey, Southern California, Northern California and Chicago, with a build-out potential of over 3.3 million square feet . . .

> The transaction is anticipated to create substantial synergies, including near-term synergies of approximately $80 million in corporate general and administrative cost savings, operating leverage, interest expense and lease adjustments, which are forecast to increase annual stabilized core funds from operations (Core FFO) per share by $0.06-$0.08. A combination of revenue synergies and incremental development volume has the potential to generate $40 million of additional annual revenue and development profit in the future. . . .
>
> Under the terms of the agreement, DCT shareholders will receive 1.02 Prologis shares for each DCT share they own. The transaction, which is currently expected to close in the third quarter of 2018, is subject to the approval of DCT stockholders and other customary closing conditions. At closing, it is anticipated that Philip L. Hawkins will join the Prologis board of directors.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

38. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

39. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

40. The Registration Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch").

41. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly

disclosed.

42. The Registration Statement states that:

At the April 26, 2018 meeting of the DCT Board, representatives of BofA Merrill Lynch discussed its preliminary financial analysis of the proposed transaction, noting that this preliminary analysis was based on financial forecasts prepared by management of DCT, with respect to DCT, and by management of Prologis and provided to management of DCT, with respect to Prologis (*which were adjusted by management of DCT and provided to BofA Merrill Lynch for use in preparing its financial analysis*). Additionally, BofA Merrill Lynch's analysis addressed the *impact of projected synergy estimates* prepared by management of Prologis and provided to it by management of DCT.

(Emphasis added).

43. Defendants, however, failed to disclose the nature and extent of the adjustments that DCT management made to the Prologis management projections. This information is material because BofA Merrill Lynch performed various valuation analyses using Prologis' financial projections to derive implied merger consideration reference ranges from which to assess the fairness or unfairness of the proposed merger consideration. Depending on the changes that were made to Prologis' management projections, the merger consideration could misleadingly appear fairer to DCT stockholders.

44. Further, defendants failed to disclose the amount of synergies and cost savings that are expected to result from the Proposed Transaction, and whether these synergies and cost savings were accounted for in BofA Merrill Lynch's analyses. This information is important because forecasted cost savings and synergies achieved as a result of a merger represent tangible value to the acquirer in the form of future cash flow and earnings above and beyond what can be achieved by the target on a stand-alone basis. Thus, the acquirer can (and should) pay a higher price as a result of the existence of cost savings and synergies. Accordingly, stockholders are entitled to

understand the extent of those synergies to determine whether they were properly accounted for in the merger consideration.

45. Further, the Registration Statement discloses certain projections of DCT and Prologis for non-GAAP (generally accepted accounting principles) metrics that were used by BofA Merrill Lynch to perform its valuation analyses in connection with the Proposed Transaction. Specifically, the Registration Statement discloses non-GAAP projections of adjusted EBITDA, funds from operations ("FFO") and Core FFO, adjusted FFO ("AFFO"), and unlevered free cash flow. The Registration Statement, however, fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

46. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Registration Statement that:

> DCT and Prologis may calculate certain non-GAAP financial metrics, including cash net operating income, Adjusted EBITDA, FFO and AFFO using different methodologies. Consequently, the financial metrics presented in each company's prospective financial information disclosures and in the sections of this proxy statement/prospectus with respect to the opinion of DCT's financial advisor to DCT may not be directly comparable to one another. Further, these financial metrics are "non-GAAP financial measures" as set forth in Item 10(e) of Regulation S-K and should not be considered as alternatives to net income (determined in accordance with GAAP) or as an indication of DCT's [or Prologis'] performance. None of these non-GAAP measures represents cash generated from operating activities determined in accordance with GAAP, and none are a measure of liquidity or an indicator of DCT's [or Prologis'] ability to make cash distributions.

47. Moreover, defendants provided a vague description of the definition of DCT's and

Prologis' unlevered free cash flows, which is the key input used in BofA Merrill Lynch's Discounted Cash Flow Analysis. Specifically, the Registration Statement states that "[u]nlevered free cash flow was determined by making adjustments (including various non-cash items and capital expenditures) to Adjusted EBITDA." DCT's stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures, so that they can determine how each company's projections were calculated and what adjustments were made. The Registration Statement is misleading without this material information.

48. With respect to BofA Merrill Lynch's Selected Publicly Traded Companies Analysis of DCT and Prologis, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the companies observed by BofA Merrill Lynch in its analyses. The disclosure of this information is necessary because the utility of this analysis depends upon the similarity between the target company and the companies that are selected for comparison. Without this information, stockholders cannot observe whether the selected companies truly are comparable to the Company, or whether the companies were selected to make the merger consideration appear fair. The failure to disclose the individual multiples and financial metrics of the selected companies therefore was a material omission and renders the Registration Statement materially misleading by wrongly implying that BofA Merrill Lynch's analyses supports the fairness of the merger consideration.

49. With respect to BofA Merrill Lynch's Net Asset Value Analysis of DCT and Prologis, the Registration Statement fails to disclose: (i) the specific inputs and assumptions underlying the capitalization rates calculated and applied by BofA Merrill Lynch in its analyses;

and (ii) the individual and aggregate values that were added or subtracted to the range of implied operating real estate values in BofA Merrill Lynch's analyses of DCT and Prologis.[1]

50. The disclosure of this information is necessary because they are key inputs in BofA Merrill Lynch's analysis. Further, the capitalization rate is typically calculated by dividing the net operating income of the real estate or assets by the current market value of the real estate or assets. In its analysis, however, BofA Merrill Lynch apparently used more subjective methods to derive the selected capitalization rates; *i.e.*, by "taking into account then-recent observable data by relevant markets and/or regions (including capitalization rates for stabilized properties)." Stockholders therefore are entitled to the full disclosure of this information because, without it, they are being misled in believing that BofA Merrill Lynch's was performed in a typical or standard manner.

51. Further, with respect to BofA Merrill Lynch's Net Asset Value Analysis of Prologis, the Registration Statement fails to disclose Prologis' estimated cash net operating income for the next twelve months based on Prologis management forecasts. Notably, although the Registration Statement indicates that BofA Merrill Lynch applied its selected capitalization rates to "Prologis' estimated cash net operating income for the next twelve months based on Prologis management forecasts," the Registration Statement only provides Prologis' estimated cash net

---

[1] Specifically, with respect to DCT, the Registration Statement must disclose the value of unconsolidated joint ventures, institutional capital management and other fees, development projects in lease-up, development projects under construction and redevelopment, properties in pre-development, value-add acquisitions, land held and other assets, and the total amount of DCT's liabilities, as based on information provided by DCT management.

With respect to Prologis, the Registration Statement must disclose the value ascribed to strategic capital, net promotes, development management fees, developments and other assets, and the total amount of Prologis' liabilities, as based on information provided by Prologis management.

operating income for April 2018 through December 2018. The Registration Statement therefore must provide Prologis' estimated cash net operating income for the next twelve months, and/or it must clarify to what cash net operating income BofA Merrill Lynch applied its selected capitalization rates.

52. With respect to BofA Merrill Lynch's Discounted Cash Flow Analysis of DCT and Prologis, the Registration Statement fails to disclose: (i) the line item projections of DCT's and Prologis' unlevered, after-tax free cash flows for years 2018 through 2022; (ii) BofA Merrill Lynch's objective basis for selecting its chosen terminal EBITDA multiples; (iii) the perpetuity growth rates implied by BofA Merrill Lynch's analyses; and (v) the specific inputs and assumptions underlying the discount rates calculated and applied by BofA Merrill Lynch.

53. The failure to disclose the foregoing information renders the Registration Statement misleading. This information is material because defendants have relied upon BofA Merrill Lynch's fairness opinion to approve the Proposed Transaction, and have touted it to stockholders and encouraged them to vote in favor of the Proposed Transaction. If the omitted information is disclosed, stockholders can properly assess the efficacy of BofA Merrill Lynch's valuation analyses, which could cause stockholders to vote against the Proposed Transaction.

54. Further, the Registration Statement fails to disclose whether BofA Merrill Lynch performed a precedent transactions analysis in connection with its evaluation of the Proposed Transaction. If it did, defendants must disclose a fair summary of the analysis. If it did not, defendants must provide stockholders with BofA Merrill Lynch's basis for failing to do so in light of the fact that the precedent transactions analysis is one of the three most common methodologies used in valuing target companies in mergers and acquisitions. The Registration Statement is

misleading without this material information.

55. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Opinion of DCT's Financial Advisor; (ii) Certain Prologis Unaudited Prospective Financial Information; and (iii) Certain DCT Unaudited Prospective Financial Information.

56. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to DCT's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants, DCT, and DCT OP

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. DCT and DCT OP are liable as the issuer of these statements.

59. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

60. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

61. The omissions and false and misleading statements in the Registration Statement

are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

62. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

63. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

64. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants, Prologis, and Prologis OP

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants, Prologis, and Prologis OP acted as controlling persons of DCT and DCT OP within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of DCT and DCT OP, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company and DCT OP, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67. Each of the Individual Defendants, Prologis, and Prologis OP was provided with or

had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and DCT OP, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

69. Prologis and Prologis OP also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

70. By virtue of the foregoing, the Individual Defendants, Prologis, and Prologis OP violated Section 20(a) of the 1934 Act.

71. As set forth above, the Individual Defendants, Prologis, and Prologis OP had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 2, 2018

s/Karen Cody-Hopkins_____
Karen Cody-Hopkins
Cody-Hopkins Law Firm
4610 S. Ulster St #150
Denver, CO  80237
T: 303-221-4666 F: 303221-4374
E: karen@codyhopkinslaw.com

Attorney for Plaintiff

**OF COUNSEL:**

RIGRODSKY & LONG, P.A.
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

RM LAW, P.C.
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

Attorneys for Plaintiff